UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  2/28/2022
```

------------------------------------------------------------------X
                      :

YOUNGJOO RHEE,                 :

                Plaintiff,     :

                      :         21-cv-4283 (LJL)

      -v-               :

                      :     MEMORANDUM &
SHVMS, LLC d/b/a SANTE VENTURES,  :        ORDER
                      :

            Defendant.    :

                      :
------------------------------------------------------------------X

LEWIS J. LIMAN, United States District Judge:

      Defendant SHVMS, LLC, doing business as Sante Ventures ("Sante"), moves to dismiss

the third amended complaint (the "Complaint") filed against it, pursuant to Federal Rule of Civil

Procedure 12(b)(6).

## BACKGROUND

      The Court assumes the truth of the well-pleaded allegations of the Complaint and the

documents incorporated by reference.  The defendant Sante Ventures is an Austin, Texas based

manager of venture capital funds and hedge funds.  The plaintiff Youngjoo Rhee is the former

Director of Marketing and Investor Relations of Sante Ventures.  She was hired pursuant to an

employment agreement (the "Employment Agreement" or "Agreement") dated August 18, 2010,

and signed by the Managing Director of Sante Ventures, Kevin Lalande, with a start date of

October 1, 2010.  The Agreement compensated Rhee on the basis of the capital that she was

"directly involved in sourcing, qualifying and helping to close" for funds managed by Sante

Ventures.  Dkt. No. 42-1. Under the Agreement, Rhee was entitled to a cash bonus of 1% of the

total amount of capital she was directly involved in sourcing, qualifying, and helping to close, to

be paid in equal quarterly installments over three years.  For example, if she was directly involved in sourcing, qualifying and helping to close $60 million in capital in Fund II, her incentive compensation would be an additional $600,000 paid quarterly over three years, or $50,000 per quarter.  The Agreement also entitled her to a .5% carried interest payment in Fund II per $20 million of capital directly raised up to a maximum of 2%.  For example, if she was directly involved in sourcing, qualifying, and helping Sante Ventures close $60 million in capital in a $200 million Fund II that achieved its target of 3 times gross return, this would result in pretax proceeds to her of approximately $1.75 million, with her carried interest to be 50% vested upon closing each $20 million grant threshold, with the balance vesting monthly over six years. For the hedge fund, she was entitled to 6% of the total performance fee generated by the hedge fund for all capital that she was directly involved in sourcing, qualifying, and helping Sante Ventures to close.  The Agreement also provided her benefits and an interest free loan to help with her co-investment obligations.  The Agreement was attached to an email sent to her by Lalande that stated:  "See attached offer letter.  Give me a call with any questions or concerns. Otherwise, let's get to work!"  Dkt. No. 42-2 at 1.  Rhee and Sante Ventures also entered into a separate Non-Disclosure and Inventories Assignment Agreement (the "NDIA") on August 18, 2010.  The NDIA confirmed Plaintiff's status as an at-will employee whose employment could be terminated at any time with or without notice or with or without cause and that nothing in that agreement conferred any right on her with respect to continuation of service.

According to the allegations of the Complaint, Rhee performed her duties under the Employment Agreement and sourced a relationship that resulted in capital investments of $150 million from the Commonwealth of Pennsylvania Public School Employees' Retirement System ("PSERS"), and $200,000 from an individual named Hong Zhang residing in New York.  On

December 19, 2018, PSERS made an initial $75 million investment in a fund operated by Sante Ventures named Sante Health Ventures III, LP ("SHV III"), and precommitted an investment of $75 million in another fund also managed by Sante Ventures, Sante Health Ventures IV, LP ("SHV IV").  She alleges that Defendant earned approximately $25 million in management fees off of these investments and also had its reputation greatly enhanced.

Plaintiff further alleges that she was not paid the cash bonus or the carried interest payment she was entitled to under the Employment Agreement for sourcing those funds. Instead, she claims that Defendant unilaterally paid her a one-time discretionary bonus on March 6, 2020, that was a small fraction of the amounts formulaically due to her under the Employment Agreement.  The letter to her referenced the 2019 bonus and stated:  "I want to thank you for your service as Director of Marketing and Investor Relations at Sante" and that "[i]n recognition of your contribution, a cash bonus of $300,000 will be paid on March 13th, subject to customary tax withholding obligations."  Dkt. No. 42-3.  It also stated that Rhee would receive a 0.5% carried interest in SHV III.

This dispute then arose between the parties.  Based on the documents attached to the Complaint, on July 13, 2020, Plaintiff asked for the compensation that she believed she was due under her Employment Agreement.  Lalande responded that the March payment was the full bonus she would be paid and that the Agreement did not apply to her fundraising for Fund III. Plaintiff replied that the Agreement had never been modified and insisted upon being paid under the terms of the Agreement.  Then, finally, on September 9, 2020, counsel for Defendant sent a letter to counsel for Plaintiff stating that Plaintiff was not entitled to payment under the Employment Agreement because for her to receive payment based on a percentage of the assets raised, she would have to be a registered broker; it would be illegal for Plaintiff to receive the

payment and therefore illegal for Defendant to make it. The letter asserted that Defendant had

orally informed Plaintiff that she would not and could not receive transaction-based

compensation or commissions.  Counsel also asserted that the offer letter compensation terms

had been modified.   Rhee filed her initial complaint on May 12, 2021.

Plaintiff alleges that she did not agree to any modifications of her Employment

Agreement as consideration for this partial payment and the letter itself does not reflect that it is

intended to modify her Employment Agreement.  She also alleges that the 0.5% interest was

arbitrary and below what she was entitled to under her contract.  She further alleges that she

continued requesting payment for what she believed she was entitled to under the Employment

Agreement even after she received the one-time discretionary bonus but that she was not paid.

Plaintiff alleges that even after Defendant confirmed that she was admitted as a member to SHV

III, it refused to provide her the necessary paperwork to formalize her status as a member of

SHV III and that she has not received the promised benefits of membership in SHV III.

Plaintiff brings claims for breach of contract, unjust enrichment, breach of fiduciary duty,

and fraud, and also seeks attorneys' fees and costs under the NDIA and asserts a claim for

equitable estoppel.   The motion is granted in part and denied in part

## DISCUSSION

Defendant argues that Plaintiff fails to state a claim for relief on any of her claims.  It

argues that Plaintiff has not stated a claim for breach of contract because she continued to work

for Defendant knowing that the terms of her compensation had been changed and thus is deemed,

as an at-will employee, to have consented to the change in the terms of her compensation.  For

those propositions, it relies on a declaration from a Patrick Richter that, during the course of

Plaintiff's employment with Sante, Sante realized that the compensation structure Rhee was

promised was effectively a broker success fee, that the concern was discussed with her, and that as a result her pay structure was modified to a discretionary bonus structure and that Plaintiff continued to work for Sante for several years with knowledge of these changes to the terms of her employment and did not challenge the revised incentive compensation or bonus calculation. Defendant argues that the unjust enrichment claim is duplicative of Plaintiff's breach of contract claim and should be dismissed for that reason and that Plaintiff does not allege that she performed services that exceeded those that were contemplated that she would perform under her contact and for which she was paid under that contract.  Defendant further argues that Plaintiff has not stated a claim for breach of fiduciary duty because she did not execute the required documents to establish that she had a membership interest in any fund.  It finally contends that the Complaint does not allege a claim for fraud because the allegations of the Complaint merely make out a claim for breach of contract.

The motion to dismiss the breach of contract claim is denied.  Plaintiff has pleaded the elements necessary to establish a breach of contract claim under New York law: (1) the existence of a contract; (2) performance by plaintiff; (3) a breach by the defendant; and (4) damages. *Terwilliger v. Terwilliger*, 206 F.3d 240, 246 (2d Cir. 2000).  Plaintiff alleges that she and Defendant agreed to the Employment Agreement, she honored it, Defendant failed to pay her the compensation she was due, and she suffered damages as a result.  Defendant's response relies on the proposition under New York law that where an employer changes the terms and conditions of employment of an at-will employee and where the employee, knowing of those changes in terms and conditions, continues to work for the employer the employee is deemed to have assented to the modification and in effect commenced employment under a new agreement.  If the employee finds the new terms to be unacceptable, her remedy is to leave the employment.  *See, e.g., Bottini*

*v. Lewis & Judge Co.*, 621 N.Y.S.2d 753, 754 (3d Dep't 1995) ("Having remained in defendant's employment, however, plaintiff is deemed to have assented to the modification . . . ."); *Kronick v. L.P. Thebault Co.*, 892 N.Y.S.2d 895, 896 (2d Dep't 2010) ("By remaining in the defendant's employ under the new compensation terms, the plaintiff is deemed to have accepted them . . . ."). That argument, however, relies upon facts outside of the Complaint.  There is no allegation in the Complaint that Defendant chose to modify Plaintiff's terms and conditions of employment and that the investments were sourced after those terms and conditions had been changed and Plaintiff had continued to work.  The assertion, moreover, that the Agreement was unenforceable is contained in a statement of facts and not in the argument, and therefore the Court does not consider it at this stage.  Plaintiff's breach of contract claim is not susceptible to resolution on a motion to dismiss.

        The motion to dismiss the claim for unjust enrichment is also denied.  The thrust of Defendant's argument is that Plaintiff cannot recover in quasi-contract what is covered by a contract and that because the new terms and conditions of the at-will employment covered her work for Defendant, she is not entitled to anything more.  The law of New York is clear that an at-will employee who is paid her salary cannot recover in quasi-contract for work that falls within the scope of her duties in her position.  *See Levion v. Société Générale*, 822 F. Supp. 2d 390, 405 (S.D.N.Y. 2011) (Sullivan, J.); *Hallett v. Stuart Dean Co.*, 517 F. Supp. 3d 260, 290 (S.D.N.Y. 2021); *Lamb v. Money Transfer Sys., Inc.* 2013 WL 5216442, at *12 (W.D.N.Y. Sep. 16, 2013).  Here, all of the work for which Plaintiff seeks compensation in quasi-contract falls within the terms of her contract.  But Plaintiff alleges that there was no agreed-upon pay other than that reflected in the Agreement, and Defendant has asserted that the Agreement is unenforceable.  Plaintiff is entitled to plead claims in quasi-contract in the alternative—to the

extent that the contract is unenforceable, she can recover in quasi contract.  *See Caro Capital LLC v. Koch*, 2022 WL 463338, at *14 (S.D.N.Y. Feb. 14, 2022).   Taking the allegations of the complaint as true, as the Court must at this stage, and assuming that there was no new employment agreement, Plaintiff may be entitled to recover the benefit in quasi-contract for any value of her services she conveyed to Defendant for which she was not otherwise compensated by what Defendant voluntarily gave her (and which she claimed at the time was not sufficient).

Defendant argues that the breach of fiduciary duty claim should be dismissed for two reasons: (1) Plaintiff failed to sign the documents that would give her a membership interest in a fund; and (2) she has not alleged a breach of duty because the failure to pay her pursuant to an illegal contract is not a breach of fiduciary duty.  A claim for "[b]reach of fiduciary duty requires (1) the existence of a fiduciary duty owed by the defendant; (2) a breach of that duty; and (3) resulting damages."  *Jones v. Voskresenskaya*, 5 N.Y.S.3d 16, 17 (1st Dep't 2015).  Plaintiff has alleged enough at this stage to establish the existence of a fiduciary duty.  Defendant stated that she would have an interest in one of the funds.  It is established "that a managing or general partner of a limited partnership is bound in a fiduciary relationship with the limited partners." *Riviera Congress Assocs. v. Yassky*, 223 N.E.2d 876, 879 (N.Y. 1966); *see also Tucker Anthony Realty Corp. v. Schlesinger*, 888 F.2d 969, 973 (2d Cir. 1989) ("New York makes no distinction between the fiduciary duty owed by a general partner and that owed by a corporate director. One is not greater, and the other lesser. Both are bound by the same rule of fair-dealing with limited partners or shareholders who rely on the integrity of the general partner and corporate directors . . .").  Defendant's argument that there is no breach of fiduciary duty rests on an assumption that she never actually entered into a contract that would in turn give rise to the fiduciary duty, because she did not sign required documents to establish a membership interest in the fund.

Although not explicitly labeled as such in its motion to dismiss, this argument appears to rest on the application of New York's statute of frauds, which requires certain agreements to be "in writing, and subscribed by the party to be charged therewith."  N.Y. Gen. Oblig. L. § 5-701.  The statute of frauds is an affirmative defense that may appropriately be raised on a motion to dismiss.  *See Mercator Corp. v. Windhorst*, 159 F. Supp. 3d 463, 471 (S.D.N.Y.).  It is, however, generally not applicable to agreements that are not in writing and subscribed to that are agreements to form a joint venture or a partnership unless the agreement has a specified durational term that exceeds one year.  *See Ramgoolie v. Ramgoolie*, 2017 WL 9565534, at *6 (S.D.N.Y. May 31, 2017), *report and recommendation adopted*, 2017 WL 3575853 (S.D.N.Y. Aug. 18, 2017); *see also Foster v. Kovner*, 840 N.Y.S.2d 328, 332 (1st Dep't 2007) ("[T]he statute of frauds is generally inapplicable to an agreement to create a joint venture . . . because, absent any definite term of duration, an oral agreement to form a partnership or joint venture for an indefinite period creates a partnership or joint venture at will").  The Complaint does not allege that the agreement for her to become a member in the fund would last for over one year.  Under the facts as alleged in the Complaint, the membership agreement was not required to be in writing and signed by Rhee in order to become effective.  Rhee has thus alleged a relationship giving risk to a fiduciary duty owed by the plaintiff.  She has also alleged that defendant breached its duty of loyalty and good faith by intentionally violating federal and state securities laws to enrich itself at the expense of the plaintiff, and took proceeds owed to Rhee for its own benefit, thereby alleging a breach of the fiduciary duty.  These allegations are sufficient to plead a breach of fiduciary duty.  The motion to dismiss the fiduciary duty claim is denied.

    The motion to dismiss the fraud claim is granted.  Plaintiff's allegations are subject to Federal Rule of Civil Procedure 9(b)'s requirement to plead fraud with particularity.  "To

establish fraud, a plaintiff must prove a misrepresentation or a material omission of fact which was known to be false by the defendant, made for the purpose of inducing the other party to rely upon it, justifiable reliance, and injury." *Curtis-Shanley v. Bank of America*, 970 N.Y.S.2d 830, 832 (2d Dep't 2013). In other words, the elements of a fraud claim under New York law are (1) a material misrepresentation of fact; (2) knowledge of its falsity; (3) an intent to induce reliance; (4) justifiable reliance by the plaintiff; and (4) damages. *Eurycleia Partners, LP v. Seward & Kissel, LLP*, 910 N.E.2d 976, 979 (N.Y. 2009). As Plaintiff admits, "parallel fraud and contract claims may be brought [only] if the plaintiff (1) demonstrates a legal duty separate from the duty to perform under the contract; (2) points to a fraudulent misrepresentation that is collateral or extraneous to the contract; or (3) seeks special damages that are unrecoverable as contract damages." *Merrill Lynch & Co. Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 183 (2d Cir. 2007). Moreover, "[a] party fraudulently induced to enter into a contract may join a cause of action for fraud with one for breach of contract." *RKB Enters., Inc. v. Ernst & Young*, 582 N.Y.S.2d 814, 816 (3d Dept. 1992). The allegedly fraudulent statement here is nothing other than the contract itself—Plaintiff alleges that Defendant did not intend to pay her as promised. Specifically, Plaintiff alleges that Defendant represented to Plaintiff that it would pay her and that it did not require her to be registered. Dkt No. 42 ¶¶ 63–65. The Complaint alleges in conclusory fashion that Defendant did not intend to pay her under the Employment Agreement but alleges no facts that it lacked such an intent at the time, *id.* ¶ 67; the documents attached to the Complaint tend to establish the contrary. The Complaint also alleges that Defendant did not provide Plaintiff with the paperwork to complete to formalize her status as a member in SHV III but does not allege an intentionally false statement made in connection with that conduct. The Complaint therefore fails to state a claim for fraud.

Defendant moves to dismiss Plaintiff's fifth claim for relief for recovery of attorney's fees under the NDIA. The NDIA provides: "In the event of any litigation arising from or relating to this Agreement [the NDIA], the prevailing party in such litigation proceedings shall be entitled to recover, from the non-prevailing party, the prevailing party's costs and reasonable attorney's fees, in addition to all other legal or equitable remedies to which it otherwise might be entitled." Dkt. No. 47-1 at 23. The interpretation of the NDIA is governed by Texas law. *Id.* at 22. Defendant sued Plaintiff in Texas federal district court for a declaratory judgment that the Employment Agreement was not enforceable. That court dismissed the action on August 9, 2021 for lack of personal jurisdiction without prejudice to Defendant filing its claim in another jurisdiction. Defendant cites law to the effect that "to be a 'prevailing party' under Texas law, a party must 'must [sic] obtain actual and meaningful relief, something that materially alters the parties' legal relationship. That is, a plaintiff must prove compensable injury and secure an enforceable judgment in the form of damages or equitable relief.'" Dkt No. 46 at 10 (quoting *Intercontinental Grp. Partnership v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 652 (Tex. 2009) (citing *Farrar v. Hobby*, 506 U.S. 103, 111–12 (1992))). It points out that the Texas court did not issue any substantive ruling on the request for declaratory relief; it simply dismissed the complaint without prejudice on procedural grounds. *Intercontinental Group* is directly on point. It holds that the term "prevailing party" in a contractual fee-shifting provision should be understood to require the receipt on actual relief on the merits of a claim that materially alters the legal relationship between the parties; a determination that the defendant breached a contract— without the award of any damages—in that case did not make the plaintiff a prevailing party. The fifth claim for relief is dismissed.

Plaintiff's sixth and final claim for relief is titled "equitable estoppel." It alleges that

Defendant should be estopped from claiming illegality as a defense to the breach of contract claim because Plaintiff relied on the Employment Agreement in performing her services. The sixth cause of action does not seek any affirmative relief. It merely asks that the defense be precluded from asserting illegality as a defense to the breach of contract claim. Because it does not seek any affirmative relief, it is dismissed.

## CONCLUSION

The motion to dismiss is GRANTED in part and DENIED in part. Plaintiff has filed her complaint multiple times and has not requested leave to replead. The claims that are dismissed are therefore dismissed with prejudice.

SO ORDERED.

Dated: February 28, 2022
New York, New York

_____
LEWIS J. LIMAN
United States District Judge

11