UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
------------------------------------------------------------------X
                                                                  :
YOUNGJOO RHEE,                                                    :
                                                                  :
                              Plaintiff,                          :
                                                                  :
          -v-                                                     :
                                                                  :
SHVMS, LLC, d/b/a SANTÉ VENTURES,                                :
                                                                  :
                              Defendant.                          :
                                                                  :
------------------------------------------------------------------X
```

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:__2/5/2024__

21-cv-4283 (LJL)

MEMORANDUM AND
ORDER

LEWIS J. LIMAN, United States District Judge:

Plaintiff Youngjoo Rhee ("Plaintiff") moves for reconsideration, Dkt. No. 127, of the

Court's Opinion and Order, Dkt. No. 126, granting the motion of defendant SHVMS, LLC, d/b/a

Santé Ventures ("Defendant") for a new trial or remittitur.  For the following reasons, Plaintiff's

motion is DENIED.

**DISCUSSION**

"A motion for reconsideration should be granted only if the movant identifies 'an

intervening change of controlling law, the availability of new evidence, or the need to correct a

clear error or prevent manifest injustice.'"  *Spin Master Ltd. v. 158*, 2020 WL 5350541, at *1

(S.D.N.Y. Sept. 4, 2020) (quoting *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable

Tr.*, 729 F.3d 99, 104 (2d Cir. 2013)).  "The standard for granting a motion for reconsideration

'is strict, and reconsideration will generally be denied unless the moving party can point to

controlling decisions or data that the court overlooked—matters, in other words, that might

reasonably be expected to alter the conclusion reached by the Court.'"  *Justice v. City of New

York*, 2015 WL 4523154, at *1 (E.D.N.Y. July 27, 2015) (quoting *Shrader v. CSX Transp., Inc.*,

70 F.3d 255, 257 (2d Cir. 1995)).

First, Plaintiff argues the Court erred in granting a new trial or remittitur because the Jury's damages award did not "shock the judicial conscience." Dkt. No. 128 at 2. In its Opinion and Order, the Court concluded that "the Jury committed two quantifiable errors" in calculating Plaintiff's compensatory damages, so the Court remitted the Jury's award. Dkt. No. 126 at 19. The Second Circuit has explained:

> Where there is no particular discernable error, we have generally held that a jury's damage award may not be set aside as excessive unless "the award is so high as to shock the judicial conscience and constitute a denial of justice." Where the court has identified a specific error, however, the court may set aside the resulting award even if its amount does not "shock the conscience."

*Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 165 (2d Cir. 1998) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 13 (2d Cir. 1988)); *see also Torres v. Metro-N. R.R. Co.*, 2023 WL 4487726, at *6 (S.D.N.Y. July 12, 2023); *Knox v. John Varvatos Enters. Inc.*, 512 F. Supp. 3d 470, 492 (S.D.N.Y. 2021); *Crews v. Cnty. of Nassau*, 149 F. Supp. 3d 287, 293 (E.D.N.Y. 2015) (Bianco, J.). Because the Court identified two specific errors in the Jury's damages calculations, the Court was not required to apply the "shock the conscience" standard. Plaintiff's contention that the Court erred by failing to apply that standard is therefore unavailing.

Next, Plaintiff submits new evidence that "affirm[s] the jury's finding" that PSERS's investments closed "well before Ms. Rhee was terminated by Sante." Dkt. No. 128 at 3–4. Specifically, she quotes from materials available on PSERS's website which she contends show that PSERS made a commitment to invest in both Fund III and Fund IV in January 2019. *Id.*; *see also id.* at 4.[1] But Plaintiff's reliance on that new evidence is misplaced. To determine whether

---

[1] The website post consists of a resolution by the PSERS's board that PSERS "herby invests" $150 million in Defendant's funds—comprised of $75 million to Fund III and $75 million to Fund IV—subject to the final terms and conditions of the investment being "satisfactory to the Investment Office, the Office of Chief Counsel, and the Office of Executive Director, as evidenced either by the appropriate signatures on, or by a memo to that effect appended to, the implementing investment contract." Dkt. No. 128 at 3.

a "verdict was against the weight of the evidence," *Raedle v. Credit Agricole Indosuez*, 670 F.3d 411, 417 (2d Cir. 2012), a court must "review the evidence *adduced at trial*," *DiGennaro v. Wal-Mart Stores, Inc.*, 141 F.3d 1151 (table), 1998 WL 51344, at *1 (2d Cir. 1998) (emphasis added). It would defy logic to conclude that the Jury correctly calculated a damages award based on evidence the Jury never received.  Nor does Plaintiff's new evidence warrant reconsideration. She emphasizes that these documents have been publicly available on PSERS's website since 2019.  Dkt. No. 128 at 3.  To justify reconsideration, however, "[n]ewly discovered evidence must not have been available prior to entry of the judgment leading to reconsideration." *Pettiford v. City of Yonkers*, 2020 WL 1989419, at *2 (S.D.N.Y. Apr. 27, 2020).  Thus, as the PSERS materials "were previously available" to Plaintiff, "[t]he documents provided by [P]laintiff now for the first time are not new evidence justifying reconsideration."  *Herrera-Mendoza v. Byrne*, 2006 WL 3388391, at *1 (D. Conn. Nov. 21, 2006).

　　　Plaintiff further challenges the Court's ruling that the Offer Letter's vesting clause was unambiguous.  Dkt. No. 128 at 4.  According to Plaintiff, that clause is "obvious[ly] ambigu[ous]," in light of a competing definition of the term "close" as the completion of a sales presentation.  *Id.*[2]  But "[a]mbiguity does not arise merely by virtue of the fact that the parties volunteer different definitions."  *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 351 (S.D.N.Y. 2013) (citing *L. Debenture Tr. Co. of N.Y. v. Maverick Tube Corp.*, 595 F.3d 458, 467 (2d Cir. 2010)); *see also Brown v. Gardner*, 513 U.S. 115, 118 (1994) ("Ambiguity is a creature not of definitional possibilities but of . . . context.").  And beyond identifying competing

---

[2] Plaintiff cites one dictionary definition that defines close as "[t]o complete a deal, discussion, negotiation, or sales presentation," and another that, in selling, "this is the final action in a selling presentation where a salesperson requests a buyer to order or give a commitment to buy."  Dkt. No. 128 at 4.

definitions, Plaintiff does not offer any affirmative argument for how her capacious reading of closing would give meaning to the vesting clause. Moreover, when read as a whole, the bonus provision dispels any doubt that closing refers to an investor's binding commitment to contribute capital. The provision states: "For example, if you are directly involved in . . . helping us close $60MM in capital in Fund II, then your incentive compensation would be an additional $600,000 paid quarterly over three years, or $50,000 per quarter." Plaintiff's Ex. 1a. Under Plaintiff's interpretation, she would be entitled to the $600,000 incentive compensation in that example when she helped complete a sales pitch requesting $60 million in capital, since closing would not require that the investor made a binding commitment. But the bonus provision precludes that reading by specifying that Plaintiff's bonus is "1.00% of the total amount of capital directly *raised*." *Id.* (emphasis added). Accordingly, Plaintiff would receive the $600,000 bonus in the provision's example only if an investor actually invested $60 million with Defendant. The bonus provision therefore confirms that closing refers to a commitment to contribute capital, rather than the mere act of pitching to a potential investor. Since Plaintiff's proposed interpretation is contrary to the bonus provision's text, she has not shown that the vesting clause is ambiguous.

Finally, Plaintiff reiterates a contention she made for the first time at oral argument on the motion for remittitur—namely, that Defendant had improperly sought a setoff of her $300,000 payment without pleading setoff as a counterclaim or affirmative defense. Dkt. No. 128 at 6. Yet the Court rejected that argument in its Opinion and Order. Dkt. No. 126 at 15 n.4. After observing that Plaintiff had waived her setoff objection by failing to raise it in her motion papers, the Court explained: "In any event, the doctrine of setoff permits parties to apply 'their mutual debts against each other.' As Plaintiff did not incur a debt to Defendant when she received the $300,000, the doctrine of setoff is inapplicable to that payment." *Id.* (quoting *Westinghouse*

*Credit Corp. v. D'Urso*, 278 F.3d 138, 149 (2d Cir. 2002) (quotation omitted)). Plaintiff does

not address—let alone refute—that reasoning. *See Rattray v. Cadavid*, 2018 WL 11222582, at

*2 (S.D.N.Y. Oct. 2, 2018) (rejecting a motion for reconsideration because "Plaintiff's [motion]

reconsideration d[id] not address the Court's reasoning"). Consequently, the Court will not grant

reconsideration on this ground. *See Kloner v. United States*, 2016 WL 5921071, at *8 (E.D.N.Y.

Oct. 11, 2016) ("A mere disagreement with the Court's legal determination is not a valid basis

for reconsideration." (quoting *E.E.O.C. v. Bloomberg L.P.*, 751 F. Supp. 2d 628, 651 (S.D.N.Y.

2010))).

In sum, Plaintiff has "not established [her] entitlement to the 'extraordinary remedy' of

reconsideration." *Rivas v. Banks*, 2024 WL 292276, at *2 (S.D.N.Y. Jan. 25, 2024) (quoting

*Sigmon v. Goldman Sachs Mortg. Co.*, 229 F. Supp. 3d 254, 257 (S.D.N.Y. 2017)). The Court

therefore denies her motion for reconsideration.

Yet Plaintiff also requests clarification of "the issues . . . to be tried at [a] new trial," in

the event that she foregoes a reduced verdict. Dkt. No. 128 at 8. As the Court's Opinion and

Order explained, the new trial would be limited to "the issue of damages." Dkt. No. 126 at 23.

Accordingly, "[a]t . . . a new trial, the jury would be bound by the prior jury's determination[] of

liability" on her breach of contract claim, "but would then be asked, after hearing evidence, to

determine the amount" of Plaintiff's damages from Defendant's breach. *Griffin v. Four Seasons

Resorts & Hotels, Ltd.*, 1999 WL 212679, at *2 (S.D.N.Y. Apr. 12, 1999). Each party would

have the opportunity to present evidence on Plaintiff's damages to a jury, including new

evidence, so long as it is consistent with the prior Joint Pretrial Order. Dkt. No. 107. Should

either party wish to amend the Joint Pretrial Order, that party could file a motion to do so. A

"district court has broad discretion in its control and management of [a] new trial. Decisions

respecting the admission of additional witnesses and proof [would] be guided by considerations of fairness and justice to all parties." *White v. McDermott*, 2010 WL 4876025, at *1 (D. Conn. Nov. 19, 2010) (quoting 11 Charles A. Wright, Arthur R. Miller, et al., *Federal Practice and Procedure* § 2803); *see also Washington v. Kellwood Co.*, 2016 WL 5680374, at *2 (S.D.N.Y. Sept. 30, 2016), *aff'd*, 714 F. App'x 35 (2d Cir. 2017).  And, as explained above, the Court's prior rulings reflected its view of the evidence and argument presented to the Jury and Court at the time.  The Court did not prejudge how it would decide the issue of damages if new or different evidence were presented.  In that respect, the parties would be free to make motions *in limine* regarding specific evidentiary or legal issues in advance of a new trial.  But unless the parties do so, the Court cannot anticipate how it would resolve those motions, as any such predication would constitute an impermissible "advisory opinion on a hypothetical issue." *Ackerman v. Columbia Broad. Sys., Inc.*, 301 F. Supp. 628, 634 (S.D.N.Y. 1969) (Weinfeld, J.).

## CONCLUSION

Plaintiff's motion for reconsideration, Dkt. No. 127, is DENIED.  Plaintiff shall file a letter notifying the Court within 7 days from the date of this Memorandum and Order whether Plaintiff accepts the reduced verdict or chooses a retrial on the issue of damages.

If Plaintiff files a letter accepting the reduced verdict, she shall file a proposed judgment within 7 days thereafter that reflects the reduced damages award and includes prejudgment interest in accordance with the Court's Opinion and Order.  Plaintiff shall also file a letter concurrently with her proposed judgment that sets forth her prejudgment interest calculations. Defendant shall then have 7 days to file a letter raising any objections to Plaintiff's prejudgment interest calculations.

The Clerk of Court is respectfully directed to close Dkt. No. 127.


SO ORDERED.


Dated: February 5, 2024
      New York, New York

                                               LEWIS J. LIMAN
                                  United States District Judge